MICHAEL ROLAND LYNCH v. JEAN T. LYNCH

No. 137

(Filed 8 July 1981)

1. **Rules of Civil Procedure § 4— service of process—registered or certified mail —necessity for affidavits**

   A party may properly be served by registered or certified mail pursuant to G.S. 1A-1, Rule 4(j)(9)b without the filing of any affidavits; however, the affidavits described in the statute must be filed (1) before judgment by default may be had on such service and (2) when the party served appears in the action and challenges such service upon him.

Lynch v. Lynch

2. **Divorce and Alimony § 23.4; Rules of Civil Procedure § 4— child support order — default judgment—service by certified mail—necessity for affidavits**

   A child support order was a nullity as to the nonresident defendant who was purportedly served by certified mail where it was a default judgment and was entered before the affidavits required by G.S. 1A-1, Rule 4(j)(9)b were filed.

3. **Divorce and Alimony § 26.1— temporary child custody order—no full faith and credit**

   A temporary child custody order is not entitled to full faith and credit and has no effect on defendant's ability to seek full faith and credit of a final custody judgment subsequently rendered in another state.

4. **Appearance § 1; Rules of Civil Procedure § 12— abolition of special appearance**

   By the enactment of Rule 12 of the Rules of Civil Procedure, the Legislature abolished the special appearance in this jurisdiction.

5. **Appearance § 1.1; Divorce and Alimony § 23.4; Infants § 5.1— child custody proceeding—nonresident defendant—waiver of objection to personal jurisdiction—full faith and credit motion as general appearance**

   The nonresident defendant's motions in a child custody proceeding challenged only subject matter jurisdiction and not personal jurisdiction. Furthermore, defendant made a general appearance under G.S. 1-75.1 by requesting the court to give full faith and credit to a foreign judgment awarding custody to her, and since defendant made the general appearance before filing a motion contesting personal jurisdiction, she waived her right to challenge the court's exercise of personal jurisdiction over her from the date of such appearance, and the court was authorized to grant her full faith and credit motion.

6. **Divorce and Alimony § 26.1; Infants § 5.1— child custody—general appearance by nonresident defendant—full faith and credit to foreign decree—termination of jurisdiction**

   In a child custody proceeding in which the nonresident defendant made a general appearance by moving that an Illinois custody decree be given full faith and credit, the trial court's jurisdiction over defendant terminated when the court found that the Illinois decree was entitled to full faith and credit where the law of Illinois prohibited plaintiff from filing a motion to modify the Illinois decree on the basis of changed circumstances until two years after the decree was entered, and plaintiff's custody action was instituted before those two years had passed.

   Justice CARLTON dissenting.

   Justice MEYER dissenting.

   Justice HUSKINS joins in this dissent.

ON REHEARING.

DEFENDANT'S petition for a rehearing of our decision filed 2 February 1981, reported at 302 N.C. 189, 274 S.E. 2d 212 (1981),

was allowed for a limited purpose on 7 April 1981. No additional oral argument was permitted and no additional briefs were required or filed.

The facts of this case were adequately summarized in our previous opinion.

*Hicks, Harris & Sterrett by Richard F. Harris, III, for defendant appellant.*

*No counsel for plaintiff appellee.*

COPELAND, Justice.

We readopt our prior opinion, reported at 302 N.C. 189, 274 S.E. 2d 212 (1981), except as hereinafter modified.

We previously held that the orders entered in North Carolina on 6 April 1978 and 1 June 1978, awarding plaintiff temporary custody and permanent custody, respectively, were not binding on defendant because she was never properly served with summons pursuant to G.S. 1A-1, Rule 4(j)(9). Rule 4(j)(9) provides that any person who is not an inhabitant of the State or found within the State may be served with process in the following manner:

> ". . . b. Registered or certified mail.— Any party subject to service of process under this subsection (9) may be served by mailing a copy of the summons and complaint, registered or certified mail, return receipt requested, addressed to the party to be served. Service shall be complete on the day the summons and complaint are delivered to the address. . . . Before judgment by default may be had on such service, the serving party shall file an affidavit with the court showing the circumstances warranting the use of service by registered or certified mail averring (i) that a copy of the summons and complaint was deposited in the post office for mailing by registered or certified mail, return receipt requested, (ii) that it was in fact received as evidenced by the attached registered or certified receipt or other evidence satisfactory to the court of delivery to the addressee and (iii) that the genuine receipt or other evidence of delivery is attached. This affidavit shall be prima facie evidence that service was made on the date disclosed therein in accordance with the requirements of this paragraph; and shall also con-

stitute the method of proof of service of process when the party appears in the action and challenges such service upon him. This affidavit together with the return receipt signed by the person who received the mail raises a rebuttable presumption that the person who received the mail and signed the receipt was an agent of the addressee authorized by appointment or by law to be served or to accept service of process or was a person of suitable age and discretion residing in the defendant's dwelling house or usual place of abode."

The record shows that at the time of the 1 June 1978 order awarding permanent custody to plaintiff, the only document before the court which tended to prove service of process on defendant was a return receipt for certified mail, allegedly signed by defendant, dated 11 April 1978. Plaintiff did not file the affidavit setting forth the circumstances warranting the use of service by certified mail until 19 January 1979. No affidavit stating that copies of the summons, complaint, and order were deposited in the post office for delivery by registered or certified mail was ever filed. Consequently, we held that "[s]ince plaintiff failed to file the affidavits required by Rule 4(j)(9)b the return receipt of certified mail was insufficient to prove service of process, and plaintiff was never properly served in this action." --- N.C. at ---, 274 S.E. 2d at 218. We therefore found that the North Carolina orders of 6 April 1978 and 1 June 1978 were nullities as to defendant.

[1] Reconsideration of the language of Rule 4(j)(9)b compels us to adjust the rationale by which we reached this conclusion. The statute specifies two circumstances under which the affidavits described therein must be filed; first, before judgment by default may be had on such service, and second, when the party served appears in the action and challenges such service upon him. Thus, a party may be properly served by registered or certified mail without filing any affidavits, and such process shall be complete on the day the summons and complaint are delivered to the address thereon. *See, e.g., Hassell v. Wilson*, 301 N.C. 307, 272 S.E. 2d 77 (1980); *Guthrie v. Ray*, 293 N.C. 67, 235 S.E. 2d 146 (1977).

[2] Applying this interpretation of Rule 4(j)(9)b to the facts of the case *sub judice*, we find the 1 June 1978 order a nullity as to

Lynch v. Lynch

defendant because it was a default judgment, entered before the requisite affidavits were filed, which is expressly prohibited by the language of the statute. Thus, we reaffirm the conclusion in our prior opinion that the 1 June 1978 order was not binding on defendant.

[3] Whether the temporary custody order of 6 April 1978 was binding on defendant is immaterial to the decision in this case. The temporary order was, according to its own terms, superseded by the entry of a permanent order on 1 June 1978. The version of G.S. 50-13.5(d)(2) in effect at the time of the 6 April 1978 order expressly provided that, upon gaining jurisdiction over the minor child, the court was authorized to enter orders for the temporary custody of the child pending the service of process. The temporary order thus had no bearing upon whether the North Carolina court had personal jurisdiction over defendant. In addition, a temporary custody judgment is not entitled to full faith and credit and has no effect on defendant's ability to seek full faith and credit of a final custody judgment subsequently rendered in another state. *In re Craigo*, 266 N.C. 92, 145 S.E. 2d 376 (1965). *See also Spence v. Durham*, 283 N.C. 671, 198 S.E. 2d 537 (1973), *cert. denied*, 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed. 2d 473 (1974). We therefore find it unnecessary to determine whether the 6 April 1978 order was binding on defendant.

In our previous opinion, we interpreted defendant's motions of 30 November 1978 as motions filed under G.S. 1A-1, Rule 12, and found that none of these motions constituted a Rule 12(b) motion contesting personal jurisdiction. We further found that defendant made a general appearance under G.S. 1-75.7 by requesting the court to give full faith and credit to the Illinois judgment awarding custody to her, filed 17 July 1978. We reasoned that since defendant made a general appearance before filing a motion contesting personal jurisdiction, she waived her right to challenge the court's exercise of personal jurisdiction over her from that date forward. In conclusion, we stated that once the trial court asserted jurisdiction over defendant, it should have granted her motion seeking full faith and credit of her Illinois judgment.

In her petition for rehearing, defendant contested that portion of the opinion which held that since defendant waived her

right to challenge personal jurisdiction under Rule 12, the court properly exercised jurisdiction over her after 30 November 1978. It is defendant's contention that her motions did include a Rule 12(b) motion contesting personal jurisdiction.

[4] After careful reconsideration of the motions as a whole, it becomes clear that what defendant attempted to accomplish by this document was a special appearance, subjecting herself to the jurisdiction of the court for the limited purpose of having our court accord full faith and credit to the Illinois judgment of 17 July 1978. Indeed, defendant prefaced her motions by the following statement: "The defendant, Jean T. Lynch, makes this special appearance, and shows unto the Court that. . . ." Defendant erred in entering her motions in the form of a special appearance, in that this Court has held that by the enactment of Rule 12 of the Rules of Civil Procedure, the Legislature abolished the special appearance in this jurisdiction. *Simms v. Mason's Stores, Inc.*, 285 N.C. 145, 203 S.E. 2d 769 (1974). Further evidence of defendant's error is found in her failure to state anywhere in the document that her motions were made under the provisions of Rule 12. The form and content of the motions are very confusing, lending themselves to a number of interpretations.

[5] In attempting to construe defendant's motions, we are guided by the fact that her apparent purpose in filing the document was to obtain enforcement of the Illinois judgment awarding her custody of the minor child. We therefore construe the ambiguity in the document, where possible, in the direction of allowing defendant to achieve her ultimate purpose. Before stating her six actual motions in the document, defendant sets forth twenty-four statements of fact, including the following:

> "13. North Carolina had no grounds for personal jurisdiction over the defendant in that the defendant was not served with process within North Carolina and has had no contacts with North Carolina justifying or allowing service outside the state, as set out in G.S. 1-75.4.
>
> 14. The courts of North Carolina where the defendant mother is neither domiciled, resident or present may not cut off her immediate right to the care, custody, management and companionship of her minor child without having jurisdiction over her in personam.

15. The defendant has not made a general appearance herein and jurisdiction has not been conferred by G.S. 1-75.7. . . .

18. Proof of jurisdiction in accordance with G.S. 1-75.11 was not made and the plaintiff can show no grounds for personal jurisdiction over the defendant because no such grounds exist.

19. Personal jurisdiction was not obtained on the defendant herein."

We interpret these as statements specifying the reasons that the North Carolina order of 1 June 1978 was not binding on defendant, and not as motions challenging personal jurisdiction at the time the document was filed. Defendant was required to show that the North Carolina order was not binding upon her before she could obtain full faith and credit of the subsequent Illinois judgment.

The only one of defendant's six actual "motions" which could be construed as a motion challenging personal jurisdiction reads as follows:

"3. To dismiss the custody action on the ground that the Orders entered and G.S. 50-13.5(c)(2)a, as applied to the facts of this case, are unconstitutional and the Court has no personal jurisdiction over the defendant."

G.S. 50-13.5(c)(2)a is a provision involving subject matter jurisdiction and does not concern personal jurisdiction in any manner. From the language of the motion it is unclear whether defendant intended to challenge subject matter jurisdiction alone or both subject matter and personal jurisdiction. Since the courts of North Carolina must assert personal jurisdiction over defendant in order to grant her request for full faith and credit, we interpret the ambiguous motion as a motion contesting subject matter jurisdiction only. We therefore readopt that portion of our prior decision which held that since defendant made a general appearance in the action by requesting the court to enforce the Illinois judgment, which appearance was entered before a motion contesting the court's exercise of personal jurisdiction over her, then defendant waived her right to challenge personal jurisdiction

and the court was authorized to grant her full faith and credit motion.

We disagree with defendant's contention that once the North Carolina courts assert jurisdiction over her to determine whether the Illinois judgment is entitled to full faith and credit, they likewise retain jurisdiction over her in the event that plaintiff files a motion seeking a new determination of custody on the basis of a substantial change in circumstances.

As a general rule, once a court in this state properly asserts jurisdiction to determine the rights of the parties to custody of a minor child, that court retains jurisdiction to modify its custody decree upon a showing of a substantial change of circumstances. *Robbins v. Robbins*, 229 N.C. 430, 50 S.E. 2d 183 (1948); *Phipps v. Vannoy*, 229 N.C. 629, 50 S.E. 2d 906 (1948); Weintraub, Commentary on the Conflict of Laws § 5.3A (2d ed. 1980). In addition, we have held that when a court in this state asserts jurisdiction in a habeas corpus proceeding to enforce a custody decree of another state, the court retains jurisdiction to modify the sister state's decree upon a showing of a substantial change in circumstances since the date the foreign decree was entered. *In re Marlowe*, 268 N.C. 197, 150 S.E. 2d 204 (1966); *Richter v. Harmon*, 243 N.C. 373, 90 S.E. 2d 744 (1956). It has been held, however, that when a court asserts jurisdiction to enforce a custody judgment of another state and no showing of a substantial change of circumstances is made, its jurisdiction terminates upon a final judgment awarding full faith and credit to the sister state's decree. *Crane v. Hayes*, 253 So. 2d 435 (Fla. 1971). In a proceeding to determine whether a custody judgment is entitled to full faith and credit, the court's inquiry is first confined to whether the judgment sought to be enforced was a final judgment rendered by a court with competent jurisdiction. If the court determines that the foreign judgment was final and rendered by a court with proper jurisdiction, then the judgment is entitled to full faith and credit and the court never reaches the merits of the custody action unless one of the parties asserts that the judgment should be modified due to a substantial change in circumstances. *Spence v. Durham, supra; Thomas v. Frosty Morn Meats, Inc.*, 266 N.C. 523, 146 S.E. 2d 397 (1966). In this type of proceeding, wherein the merits of the custody action are never reached, the court's jurisdiction terminates upon a final judgment, and any action to

modify custody filed thereafter must be based on a new deter-
mination of jurisdiction at the time the action is filed.

We reaffirm that portion of our prior opinion which held that
the 17 July 1978 Illinois judgment awarding custody to defendant
was a final judgment rendered by a court with competent
jurisdiction, and therefore entitled to full faith and credit. We
also readopt our finding that under the law of Illinois, which we
are compelled to follow in this case, plaintiff was prohibited from
filing a motion to modify the Illinois custody decree until 17 July
1980. It thus follows that the proceeding in the case *sub judice* is
one in which the court's jurisdiction terminates at the entry of
judgment awarding full faith and credit to the Illinois decree. The
trial court should never have reached the merits of the custody
dispute. Plaintiff has not entered a valid motion seeking a
modification of the custody decree, therefore any such motion
which plaintiff may file hereafter must be brought as a new ac-
tion, establishing jurisdiction anew as of the date the action is
filed.

Should plaintiff now file an action in North Carolina seeking
modification of the Illinois custody decree, his action would be
subject to the provisions of the Uniform Child Custody Jurisdic-
tion Act, G.S. 50A-1 *et seq.*, effective 1 July 1979.

G.S. 50A-8(b) provides as follows:

> "Unless required in the interest of the child, the court
> shall not exercise its jurisdiction to modify a custody decree
> of another state if the petitioner, without consent of the per-
> son entitled to custody, has improperly removed the child
> from the physical custody of the person entitled to custody or
> has improperly retained the child after a visit or other tem-
> porary relinquishment of physical custody. If the petitioner
> has violated any other provision of a custody decree of
> another state the court may decline to exercise its jurisdic-
> tion if this is just and proper under the circumstances."

Since we have held that the 17 July 1978 Illinois judgment award-
ing custody to defendant was entitled to full faith and credit, it
follows that plaintiff wrongfully removed the child from the
custody of defendant and wrongfully retained such custody, and
G.S. 50A-8(b) prevents the courts of this state from asserting
jurisdiction to modify the Illinois custody decree.

For the reasons stated above, we readopt our prior opinion except as herein modified and again remand the case to the Court of Appeals for remand to the District Court, Cleveland County, for entry of judgment awarding full faith and credit to the 17 July 1978 Illinois judgment.

Modified and affirmed.

Justice CARLTON dissenting.

I respectfully dissent for the following reasons:

(1) Clearly, North Carolina had no personal jurisdiction over this defendant and, contrary to the majority holding, defendant properly raised this issue.

(2) The motion by defendant to accord the Illinois decree full faith and credit does *not*, in my view, constitute a general appearance in plaintiff's action.

(3) Assuming *arguendo* that the motion for full faith and credit did constitute a general appearance, then contrary to the majority's conclusion, our jurisdiction does not terminate upon the granting of the full faith and credit motion. In a child custody action, the law of this state is clear that jurisdiction continues to inquire into changed circumstances.

(4) While the result reached by the majority in this particular action is acceptable, the law created to reach that result will, I fear, cause dire consequences in future actions of this nature — and other cases in which full faith and credit is sought as well. On rehearing, this Court has further confused the very issues which it presumably sought to clarify. In fact, I can agree with none of the statements of law in the majority opinion except that relating to service of process.

A.

1.

I concur fully in Justice Meyer's dissent. Like him, I believe that the proper disposition of this action *must* begin with the dismissal of the husband's action. It is beyond question that Mrs. Lynch challenged personal jurisdiction, and it is our constitutional duty to dismiss the action.

Lynch v. Lynch

As stated in the majority opinion, in her "Motions" of 30 November 1978 Mrs. Lynch included in her verified statements of fact the following:

13. North Carolina had *no grounds for personal jurisdiction* over the defendant in that the defendant was not served with process within North Carolina and *has had no contacts with North Carolina* justifying or allowing service outside the state, as set out in G.S. 1-75.4.

14. The courts of North Carolina where the defendant mother is neither domiciled, resident, or present may not cut off her immediate right to the care, custody, management, and companionship of her minor child without having jurisdiction over her in personam.

15. The defendant has not made a general appearance herein and jurisdiction has not been conferred by G.S. 1-75.7.

. . . .

18. Proof of jurisdiction in accordance with G.S. 1-75.11 was not made and the *plaintiff can show no grounds for personal jurisdiction over the defendant because no such grounds exist.*

19. *Personal jurisdiction was not obtained on the defendant herein.*

(Emphases added.) The majority interprets these "statements of fact" as challenging the custody order of 1 June 1978 and "not as motions challenging personal jurisdiction at the time the document was filed." While it is true that these statements are not motions, I disagree with the majority's conclusion that the statements challenge only the custody order. These statements are nowhere limited as to time, *i.e.,* events before the motions were filed or to certain proceedings within the husband's action. These statements are, without qualification or limitation, directed toward the issue of this state's jurisdiction over the person of the defendant, and, in my opinion, can be "interpreted" no other way.

Plaintiff's actual motions included the following:

3. To dismiss the custody action on the ground that the Orders entered and G.S. 50-13.5(c)(2)a, as applied to the facts

Lynch v. Lynch

of this case, are unconstitutional *and* the Court has no personal jurisdiction over the defendant.

(Emphasis added.) According to the majority "it is unclear whether [by motion number 3] defendant intended to challenge subject matter jurisdiction alone or both subject matter and personal jurisdiction." The use of the conjunction "and" makes it perfectly clear that she intended to challenge both. Additionally, I would argue that this motion, when construed in light of her statements of fact, shows beyond any doubt that defendant intended to contest personal jurisdiction. Because this state has no contacts with defendant which would support personal jurisdiction absent a voluntary general appearance — which at the time of her motions to dismiss she had not made — defendant's motion to dismiss for lack of personal jurisdiction should have been granted.

2.

I disagree with the majority's characterization of defendant's request for full faith and credit as a general appearance in her husband's action. By holding that defendant has made a general appearance, the majority has put an enormous price tag on defendant's right to enforce the Illinois judgment. Contrary to the majority's conclusion, the effect of a *general appearance* in a *child custody action* in which the court has jurisdiction over the other parent and the subject child is to vest the court with jurisdiction over the parties and the matter until the child reaches majority. As the defendant fears, the plaintiff can make a motion in the cause for change of custody and defendant will be forced to return to North Carolina to litigate the matter.

To speak in terms of a "general appearance" is misleading in a case such as this. When a party comes into this state seeking enforcement of a sister state's decree by way of full faith and credit, our jurisdiction over that party and over the subject matter of the prior litigation is, in my opinion, limited to inquiring whether the sister state had jurisdiction over the party against whom enforcement is sought and whether that party had notice of the litigation and an opportunity to be heard. The sole exception to this rule arises in child custody cases when a court may inquire into changed circumstances if the sister state would do so. The reason for this exception is obvious — the state has a duty to protect the interests of the minor child.

Lynch v. Lynch

However characterized, the "appearance" of the party seeking enforcement of the decree gives the courts of this state jurisdiction to inquire only into the matters listed above. No other defense may be asserted by the party against whom enforcement is sought either by way of a defense to the original claim or by way of set-off. That this is the correct result becomes clear when it is remembered that this state has a *constitutional* duty to give the foreign decree the *same effect* it would have in the original jurisdiction. The only defenses to a final judgment in the state rendering the decree are lack of jurisdiction and notice; it must be the same when enforcement is sought in this state.

When defendant requested that the Illinois judgment be accorded full faith and credit the only "adjudication" she was seeking and which was necessary was an inquiry into jurisdiction and notice. She sought no "affirmative relief" because that had already been granted by the Illinois court. Had a defendant sued in this state raised these issues and these issues only as a "defense" to the suit, he would not be deemed to have made a general appearance. *In re Blalock*, 233 N.C. 493, 503, 64 S.E. 2d 848, 855 (1951). Interestingly, *Blalock* is the same authority cited in this Court's original opinion for the proposition that defendant has made a general appearance.

By its holding that our jurisdiction terminates once the full faith and credit issue has been decided, the majority has attempted to reach the same result as I would, in spite of its insistence that defendant has made a general appearance. Were the *result* of this case our sole consideration, I would voice no objection. But the way the result is reached is more important than the result in this case because the majority has created precedent which will be applied to future litigation. Contrary to the belief of the majority, if a defendant makes a general appearance, our jurisdiction cannot terminate upon a finding that the foreign decree is entitled to full faith and credit. Our jurisdiction *must* and *does* continue until all matters arising in the litigation have been finally determined.

I vote to hold that when enforcement of a foreign decree is sought, the courts of this state acquire jurisdiction to inquire only into the jurisdiction of the foreign court and notice. The scope of our jurisdiction is only as broad as the adjudication sought. When

full faith and credit is sought, the scope of our jurisdiction over the party who seeks full faith and credit is not so broad as to enable this state to require that he or she defend all claims that the opposing party may raise. In other words, a request for full faith does not constitute a "general appearance."

3.

I am confused by the majority's holding that while defendant has made a general appearance in her husband's suit for divorce and custody our jurisdiction over her terminates upon a finding that the Illinois judgment is entitled to full faith and credit. Under our prior case law our jurisdiction to inquire into any change of circumstances arising subsequent to the sister state's decree does not evaporate but *continues* after a finding that full faith and credit should be given that decree. *In re Marlowe*, 268 N.C. 197, 150 S.E. 2d 204 (1966); *Richter v. Harmon*, 243 N.C. 373, 90 S.E. 2d 744 (1956). As of this date the husband had not entered a valid motion seeking modification of the Illinois decree, but this is irrelevant on the issue of continued jurisdiction. It should be obvious that there is no need for the husband to make such a motion unless and until the full faith and credit issue has been decided against him. It is equally obvious, I think, that the evidence offered at the hearing of this matter in North Carolina concerned fitness of the parents as of that time and implicitly included any changes in circumstances which had arisen since the entry of the Illinois decree. Now that the majority has determined that the Illinois judgment should be given full faith and credit, the husband should have the opportunity to allege changed circumstances. While, as a practical matter, his motion may be of no avail, this result is entirely separate from the question of whether our jurisdiction continues after the full faith and credit determination has been made.

4.

The majority's holding that defendant wife has entered a general appearance by requesting full faith and credit may be of little consequence in the present action because the Illinois judgment covers both claims for relief contained in the plaintiff husband's complaint. In other actions, however, the precedent created by the majority could produce dire results. Suppose, for example, the husband had sued for divorce, custody and for per-

Lynch v. Lynch

sonal injuries sustained as a result of a tort allegedly committed by the wife. Under the majority's reasoning, the only way the wife could enforce the foreign decree and obtain the child would be to submit herself to her husband's tort suit in a jurisdiction with which she has no contacts and in which she could not otherwise be required to appear. Such a result does not, in my opinion, comport with the notions of fair play inherent in due process.

B.

Like Justice Meyer, I would dispose of this case by granting full faith and credit and remanding to the trial court to allow the husband to allege changed circumstances. In all likelihood, however, his claim will not be heard, because the Uniform Child Custody Act which is now the law in this state, provides that the courts of this state shall not exercise jurisdiction to modify the decree of a sister state in child-snatching cases unless required in the interest of the child. In my opinion, this provision allows the courts of this state to exercise jurisdiction in a case such as this only under the most extraordinary of circumstances.

In summary, I vote to:

(1) Dismiss the husband's suit for lack of personal jurisdiction over the defendant wife pursuant to Rule 12(b)(2) of the Rules of Civil Procedure,

(2) Grant the wife's motion for full faith and credit,

(3) Hold that our jurisdiction over the matter continues to inquire into changed circumstances, and

(4) Enter a judgment granting the Illinois judgment full faith and credit and remanding the cause to the Court of Appeals with instructions to remand to the District Court, Cleveland County, for further proceedings.

Justice MEYER dissenting.

I must respectfully dissent from the majority opinion because I feel it contains significant errors in both reasoning and result.

To begin with, the opinion of the majority errs by only vacating the default judgment originally obtained in North Carolina by the plaintiff-husband. While I agree with the con-

struction of Rule 4 adopted by the majority, I would vote to dismiss the husband's action, not merely to set aside his default judgment. The fact that the judgment is only vacated, as I understand it, means that the action is still pending. This is especially significant in light of the majority's decision, discussed below, that defendant-wife has now made a general appearance in this State.

I find the majority opinion to be absolutely inconsistent in saying in one breath:

> *We disagree with defendant's contention* that once the North Carolina courts assert jurisdiction over her to determine whether the Illinois judgment is entitled to full faith and credit, they likewise retain jurisdiction over her in the event that plaintiff files a motion seeking a new determination of custody on the basis of a substantial change in circumstances. (Emphasis added.)

and in the next breath:

> As a general rule, once a court in this state properly asserts jurisdiction to determine the rights of the parties to custody of a minor child, that court retains jurisdiction to modify its custody decree upon a showing of a substantial change of circumstances. (Citations omitted.) In addition, we have held that when a court in this state asserts jurisdiction in a habeas corpus proceeding to enforce a custody decree of another state, the court retains jurisdiction to modify the sister state's decree upon a showing of a substantial change in circumstances since the date the foreign decree was entered.

The majority opinion goes on, however, to say in effect that if a final judgment (and I assume it would be an order rather than a judgment) awarding full faith and credit is entered *before* allegations of changed circumstances are properly made, then the jurisdiction of the North Carolina court terminates. I submit that this would be of little consolation to this defendant if such allegations are properly presented by the plaintiff before the case is *dismissed*.

The action of the husband should be dismissed rather than the order vacated for the simple reason that the courts of North

Carolina do not have personal jurisdiction over the defendant. The majority says that the defendant did not properly contest personal jurisdiction and thus waived that issue, and that defendant's motion for full faith and credit is a sufficient basis for the courts of this State to exercise the full power of jurisdiction over this defendant. I quarrel with both conclusions.

First, it seems patently clear to me that defendant did challenge personal jurisdiction from the outset. Defendant's third motion filed in this action read:

> 3. To dismiss the custody action on the ground that the Orders entered and G.S. 50-13.5(c)(2)a, as applied to the facts of this case, are unconstitutional *and the Court has no personal jurisdiction over the defendant.* (Emphasis added.)

The majority states that they "interpret" this motion as challenging only subject matter jurisdiction because defendant cited our statute involving subject matter jurisdiction. They say it is "unclear" whether she intended to also challenge personal jurisdiction. I submit that defendant has used simple English which requires no "interpretation." I contend that motion number 3 challenges jurisdiction of both subject matter and the person. If this were not so what other earthly reason could there be for the use of the conjunctive "and" in her motion.

The majority quotes at length from statements of fact made by defendant with her motion and concludes correctly that those statements were not actual motions. They were not intended to be. But they do quite clearly illustrate what defendant intended to accomplish by the filing of her motions. In my view it is quite clear that defendant intended to challenge personal jurisdiction. Moreover, if there is some possible ambiguity, which I submit is not present here, that ambiguity should be resolved against finding that defendant waived so fundamental a right as the due process right to contest personal jurisdiction. Under our Rules of Civil Procedure, the pleadings of parties are to be "construed as to do substantial justice." Rule 8(f).

As defendant did make a proper motion challenging personal jurisdiction coupled with a motion to dismiss, the proper course would be to consider the motion to dismiss before considering defendant's motion for full faith and credit. If the motion to

dismiss is granted because of lack of personal jurisdiction, the motion for full faith and credit remains, but is not appended to the husband's action. It should be clear that our Rules of Civil Procedure allow for alternative defenses to an action. Rule 12(b) provides that "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." The effect of the majority opinion is to suggest that defendant should have filed a motion contesting personal jurisdiction, and upon denial of that motion, then filed a motion for full faith and credit. Such a multi-fold process frustrates the efficient operation of our courts which the Rules were designed to insure. It also allows a court to bootstrap jurisdiction by passing over a jurisdictional defense if a defense on the merits is also pleaded. I would dismiss plaintiff-husband's action for lack of personal jurisdiction over the wife.

I would also grant defendant's motion for full faith and credit but find that in this case that is not a sufficient reason for finding that the defendant made a general appearance. This result may seem a bit tortured at first glance, but in the area of full faith and credit in custody decrees, I would caution my brethren that few rules are hard and fast. Ehrenzweig, Conflict of Laws § 87 (1962).

I believe that one of the reasons the majority wrongly interpreted defendant's motion to challenge subject matter jurisdiction only was its mistaken belief that "the courts of North Carolina *must* assert personal jurisdiction over defendant in order to grant her request for full faith and credit . . . ." (emphasis added). I submit that the majority's assumption in that regard is clearly wrong.

I would agree with the majority that defendant had made a general appearance if defendant had brought suit on the Illinois judgment, or if defendant in any way involved the adjudicatory power of this State's courts. This she has not done. Rather, she has merely brought to this State for full faith and credit recognition a judgment of a sister state. After the matter has been fully litigated in Illinois, the action of this State in recognizing and enforcing the already valid judgment is essentially administrative in character, not adjudicatory. Leflar, American Conflicts Law § 78 (3d ed. 1977). As previously stated, the position of the majority is that once we accord full faith and credit the jurisdiction of this

Court terminates, despite our holding that defendant made a general appearance. I have argued that under our prior case law our jurisdiction continues. *In re Marlowe*, 268 N.C. 197, 150 S.E. 2d 204 (1966); *Richter v. Harmon*, 243 N.C. 373, 90 S.E. 2d 744 (1956). For that reason also we should find that defendant did not make a general appearance.

I fear that the majority does not fully appreciate the impact of the *Marlowe* decision on the question before us. *Marlowe* squarely says that the granting of full faith and credit in a custody matter does not preclude inquiry into changed circumstances. "Changed conditions will always justify inquiry by the courts in the interst and welfare of the children, and decrees may be entered as often as the facts justify." 268 N.C. at 199, 150 S.E. 2d at 206. The inquiry of the court is limited, however, to the question of changed circumstances. In *Richter* this Court cited with approval the language of Judge, later Justice, Cardozo:

> The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. . . . But the limits of the jurisdiction are suggested by its origin. (Citations omitted.)

*Finlay v. Finlay*, 240 N.Y. 429, 148 N.E. 624 (1925). We do have jurisdiction to consider changed circumstances because we have jurisdiction over the child. Saying that we have jurisdiction to conduct this limited inquiry is not paramount to saying we have personal jurisdiction over the wife. My conviction that defendant should not now be subject to the jurisdiction of our courts is further bolstered by my reading of U.S. Supreme Court decisions concerning personal jurisdiction, beginning with *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and running through *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 83 L.Ed. 2d 683 (1977). Simply put, *Shaffer* mandates that "all assertions of state court jurisdiction" be evaluated under a "fair play and substantial justice" standard. Weintraub, Commentary on the Conflict of Laws § 4.11 (2d. ed. 1980). *See generally* Symposium: State Court Jurisdiction After *Shaffer v. Heitner*, 63 Iowa L. Rev. 991 (1978); Note, In Personam Jurisdiction, 4 N.C.J. Int'l L. & Com. Reg. 41 (1978). The jurisdiction of our courts is

subject to due process limitations, and the core concepts of due process in this area in my opinion are reasonableness and fairness. Weintraub § 4.3. I deem it both unreasonable and unfair that Mrs. Lynch now finds herself subject to the jurisdiction of our courts simply because she has tried to enforce what, under the majority result, is a meaningless determination of custody.

Since this action was instituted, our legislature has enacted G.S. 50A-15, the section of the Uniform Child Custody Act under which Mrs. Lynch could have proceeded to register her Illinois judgment in North Carolina had that Act then been in force. The pertinent part of G.S. 50A-15 provides:

> Filing and enforcement of custody decree of another state. — (a) An exemplified copy of a custody decree of another state may be filed in the office of the clerk of any superior court of this State. The clerk shall treat the decree in the same manner as a custody decree of a court of this State. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by a court of this State.
>
> (b) A person violating a custody decree of another state which makes it necessary to enforce the decree in this State may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody of such party's witnesses.

I question whether even perfunctory registration of a judgment under this statute would likewise amount to a general appearance, and thus whether in a similar situation Mrs. Lynch would be deemed to have so appeared. I would say that she has not.

For the reasons given, I would vote to dismiss the husband's action for lack of personal jurisdiction over defendant-wife, and to grant Mrs. Lynch's motion for full faith and credit. As noted above, granting full faith and credit does give us jurisdiction to consider changed circumstances, and the husband must ordinarily be given the opportunity to make such a motion. Under the facts of this case, however, inquiry into changed circumstances would be precluded by either the requirement of Illinois law that there be no reconsideration, on an allegation of changed circumstances,

---

**Insurance Co. v. Construction Co.**

---

of a custody decision for two years after entry of the decree or by the intervening adoption by this State of the Uniform Child Custody Act, whereunder courts of this State may decline jurisdiction in cases such as this. (See G.S. 50A-8.)

Justice HUSKINS joins in this dissent.